DATO, J., Dissenting.
*235 I fully appreciate the significant challenges faced by both the Agency and the juvenile court in this cross-border dependency matter. And I understand the majority's reluctance to say that the court abused its discretion when it denied any further continuance and terminated jurisdiction. But in the fall of 2017 after the Agency completely lost contact with Mother and the child, the juvenile court on two occasions continued the scheduled family maintenance review hearing, quite properly recognizing that it needed more current information before deciding whether to terminate jurisdiction. "[I]f we can just verify [Minor] and [Mother] are okay. [¶] I think we can comfortably close this case out."
Unfortunately, the continuances yielded no additional information. At that point, the court essentially took the position that it could not continue the matter indefinitely, conducted the review hearing with stale information, and terminated jurisdiction. In my view, the primary problem with this approach is that the evidence at the review hearing revealed two relatively simple straightforward steps the Agency admitted it could have taken but did not take to locate Mother and the Minor.
To place these two steps in proper context, it is necessary to focus on the period between May and September, 2017. Prior to May, Mother and Minor were living in Tijuana, Mexico. But in a meeting with Agency social worker Alexis Troche on May 25 at the Mexican consulate, Mother reported she had decided to move back to Ensenada, Mexico to live with the maternal grandmother (Grandmother). Troche testified that May 2017 was the last time Minor was seen in her home. He added that he personally confirmed Mother and Minor were then living with Grandmother.
On one level Mother's move back to Ensenada is hardly surprising. Since early in the case, Grandmother was Mother's primary source of support, both psychological and financial. But at the same time, Mother reported that *938 Grandmother planned to move to the United States in mid-July before Grandmother's son (Mother's brother) started high school. The question no one thought to ask, apparently, was what Mother planned to do then?
Four months later-September 2017-was the last contact with Mother, when she presented herself at the DIF offices in Ensenada after three unsuccessful attempts by DIF to conduct a home visit. At that September 29, 2017 meeting, Mother confirmed that Grandmother had recently moved to the United States. Even though (1) Mother's last-known residence was living with Grandmother in Ensenada, (2) Grandmother was always Mother's primary support, and (3) it had been told Grandmother moved to this country in July, the Agency never explained why it made no effort to search for Grandmother and her son in the United States when it lost all contact with Mother shortly after the September 29 meeting.
In addition, at the same September 29 meeting with DIF, Mother reported that she was "attempting to complete documents so she can move back to the United States." The Agency knew that Mother had previously lived in California, and it had an established procedure for locating minors and parents in the United States. Yet at the May 2018 maintenance review hearing, social worker Troche confirmed that the Agency had conducted no such search for Mother and Minor after it lost contact with them.
Thus, by October 2017 the Agency had reliable information that Grandmother had moved and Mother and Minor might be moving to the United States. Had it conducted *236 a standard search for Grandmother, Mother and Minor in the United States and come up empty, this would be a different case. But because the Agency failed to pursue these two simple reasonable steps, at the same time offering no explanation for its failure to do so, I believe the juvenile court abused its discretion when it denied Minor's counsel's further request for a continuance at the close of the maintenance review hearing and instead terminated jurisdiction.